[Cite as *State v. Reynolds*, 2013-Ohio-5055.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO :
:           Appellate Case No. 25641
Plaintiff-Appellee :
:           Trial Court Case No. 2012-CR-2889
v. :
:
BILLY RAY REYNOLDS :           (Criminal Appeal from
:            Common Pleas Court)
Defendant-Appellant :
:
· · · · · · · · · ·

O P I N I O N

Rendered on the 15th day of November, 2013.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box
972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LORI R. CICERO, Atty. Reg. #0079508, Cicero Law Office, LLC, 500 East Fifth Street, Dayton,
Ohio 45402
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.,

{¶ 1}    Billy Ray Reynolds appeals from his conviction and sentence following a jury

trial on one count of abusing harmful intoxicants in violation of R.C. 2925.31(A), a fifth-degree

felony.

{¶ 2} In his sole assignment of error, Reynolds challenges the legal sufficiency and manifest weight of the evidence to support the conviction.

{¶ 3} The charge against Reynolds involved sniffing or "huffing" paint. At trial, Trotwood police detective Jeremy Kinder testified about responding to a residence at 741 Ellsworth Drive on a disorderly-conduct call involving Reynolds. Upon arriving, Kinder saw Reynolds' cousin, Shawn Reynolds, standing in the driveway. Shawn led Kinder inside a garage and pointed out a can of spray paint on a shelf. (Trial Tr. Vol. II at 172). The can had holes in it and was dripping gold paint. (*Id*. at 174-175, 196). Kinder also noticed a "fairly strong" paint odor. (*Id*. at 176). The detective entered the residence and encountered Reynolds. Kinder described Reynolds' demeanor as "calm" and "relaxed." The detective did not notice any odor of alcohol on Reynolds, who was dressed in jeans with a coat and hat. Kinder recalled that Reynolds had duct tape wrapped around his ankles, wrists, and the cuffs of his pants. (*Id*. at 180). He noticed gold paint on Reynolds' coat, hat, and hands. (*Id*. at 181). In particular, he saw paint on the front of the coat around the shoulders and chest area. (*Id*. at 188). He did not see any freshly-painted items inside the garage or house. (*Id*. at 187). On cross examination, Kinder acknowledged that he did not observe any paint on Reynolds' mouth. (*Id*. at 192). He also did not find any bags of paint or rags with paint on them—items that might be indicative of someone "huffing" paint. (*Id*.). Kinder also acknowledged on cross examination that he did not specifically look for gold paint inside the house. (*Id*. at 199).

{¶ 4} The next witness was Kimberly Delong, a Trotwood police officer. She also responded to the disorderly-conduct call to 741 Ellsworth Drive. When she arrived, she saw Reynolds being brought out in handcuffs. (*Id*. at 204). Delong observed paint on his hands and

hat. She also recalled seeing speckles of paint in his mustache. (*Id*. at 205-207). Delong testified that she picked up the can of spray paint at issue. When she did so, paint spilled from holes in the can. (*Id.* at 211-212). She tried to place the can in an air-tight container to prevent any accelerant from evaporating. Her effort failed, however, because the lids she had did not fit her air-tight container. (*Id*. at 213-214). As a result, she emptied the paint from the can the best she could and placed the can in a plastic bag. (*Id*. at 214).

{¶ 5}     The State's third witness was Cedric Hollabaugh, a forensic chemist at the Miami Valley Regional Crime Laboratory. He testified that the spray can at issue could not be tested because of the holes in it. (*Id*. at 229). He stated that the only purpose for testing would have been to detect "harmful intoxicants" such as "volatile organic solvents." (*Id*.). He explained that "once the spray can is punctured, any possibility of a volatile organic solvent still being present would have evaporated." (*Id*.). Hollabaugh further explained that the volatile organic solvent he looks for when testing spray cans is a substance called "toluene." (*Id*. at 230). After examining the subject paint can, he noted that the can listed its contents as including toluene. (*Id.* at 231). He proceeded to explain how toluene mixes with paint to allow it to be sprayed and then evaporates, leaving behind the paint. (*Id*.). On cross examination, Hollabaugh acknowledged that a harmful intoxicant like toluene would not have remained in the paint can very long after it was punctured. (*Id*. at 233). He also testified that he could not "conclude beyond a scientific certainty that there was a harmful intoxicant in [the paint can] on September 23rd[.]" (*Id*. at 235). On redirect examination, Hollabaugh added that he also could not say a harmful intoxicant was not in the paint can at the time in question. (*Id*.). He then provided the following explanation for not testing the can:

When the spray can is punctured, the harmful intoxicants or volatile

organic solvents evaporate. And they evaporate very quickly. So not knowing

when this was punctured, if it was packaged correctly in an air tight container, I

would have still analyzed it not knowing when it was punctured and how long it

had been exposed to air. In this case it was packaged improperly, therefore, I did

not analyze it.

(*Id*. at 237).

{¶ 6}    The State's next witness was Reynolds' mother, America Reynolds. She testified that she went to the store with Shawn and left Reynolds home alone. (*Id*. at 248). She returned about an hour later and found him "messed up" and slurring his words.  (*Id*. at 248-249). America asked her son whether he had been sniffing paint. Reynolds denied it, but she saw gold paint on his fingers and lips. (*Id*. at 249). America also noticed a paint smell that had not been present before she went shopping. (*Id*. at 250). She did not see anything in the house freshly painted. (*Id*.). America suspected that Reynolds had been sniffing paint, and she went to the garage to search for the can. Reynolds followed her and became angry when Shawn found the spray paint can at issue. (*Id*. at 253). According to America, Reynolds "got a little violent" and threatened Shawn, resulting in the disorderly-conduct call to the police. (*Id*.). America admitted that Reynolds had consumed "a couple beers" before she went to the store. She testified, however, that he was not intoxicated from alcohol. (*Id*. at 254).

{¶ 7}    Shawn Reynolds was the State's final witness. He testified that defendant Reynolds did not appear to be under the influence of anything before the trip to the store. (*Id*. at 268). Shawn recalled that Reynolds asked him to lock the door when he and America left. He found the request odd because Reynolds never had said that before. (*Id*. at 269). Upon returning

home, Shawn smelled paint and determined that it was coming from the garage. (*Id.* at 270). He also noticed that Reynolds' speech was slurred. (*Id.* at 271). Shawn then found the paint can, which began spilling when he picked it up. (*Id.* at 276). Defendant Reynolds became "very upset," wanting him to put the can back. (*Id.* at 276-277).

{¶ 8}   For his part, Reynolds did not testify and presented no defense. The jury found him guilty of abusing harmful intoxicants. It also found that he had a prior conviction for the same offense, making the current charge a fifth-degree felony.[1] The trial court imposed an eight-month prison sentence. This appeal followed.

{¶ 9}   As noted above, Reynolds challenges the legal sufficiency and manifest weight of the evidence to support his conviction. He claims the State presented no evidence that he had been "huffing" paint, no evidence that the paint can contained a harmful intoxicant, and no evidence that he had a purpose to become intoxicated. Reynolds notes that the State's expert, Cedric Hollabaugh, did not test the paint can. He also stresses the existence of testimony that he had consumed alcohol and that he was not caught with a paint can or with "huffing" paraphernalia such as a rag or bag.

{¶ 10}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

---

[1]At trial, several of the witnesses confirmed that Reynolds previously had been convicted of abusing harmful intoxicants.

The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Reynolds' conviction is supported by legally sufficient evidence and is not against the weight of the evidence. With exceptions not applicable here, the statute under which he was convicted, R.C. 2925.31(A), provides that "no person, with purpose to induce intoxication or similar physiological effects, shall obtain, possess, or use a harmful intoxicant." Another provision, R.C. 2925.01(I), defines "harmful intoxicant" as including any volatile organic solvent or preparation containing a volatile organic solvent.

{¶ 13} The State's evidence supports a finding that Reynolds possessed or used a harmful intoxicant, namely the volatile organic solvent toluene, with a purpose to induce

intoxication. Although Hollabaugh did not test the can of gold spray paint, he identified toulene as a volatile organic solvent, which the Revised Code classifies as a harmful intoxicant. He also explained how toluene mixes with paint to allow it to be sprayed and then evaporates, leaving behind the paint. Finally, Hollabaugh testified that the paint can found in the garage at 741 Ellsworth Drive listed its contents as including toulene. In light of Hollabaugh's testimony, the jury reasonably could have found that the paint can contained toulene, a harmful intoxicant, at the time in question.

{¶ 14} The jury also reasonably could have found that Reynolds possessed or used the paint can with a purpose to induce intoxication. A finding that Reynolds possessed or used the paint can is supported by (1) testimony about the discovery of a spray can of dripping gold paint in the garage, (2) testimony about a strong odor of paint being present, and (3) testimony that he was observed with gold paint on his clothing and body. A finding that Reynolds had a purpose to induce intoxication is supported by (1) testimony that he had gold paint on his mustache and lips, (2) testimony that no freshly painted items were observed, (3) testimony that he asked for the door to be locked when Shawn and America left, (4) testimony that he became angry and threatening when Shawn found the paint can, and (5) testimony that he was slurring his speech and appeared "messed up" when Shawn and America returned home.

{¶ 15} Having reviewed the record, we find ample evidence to support Reynolds' conviction for abusing harmful intoxicants in violation of R.C. 2925.31(A). The conviction is supported by legally sufficient evidence and is not against the manifest weight of the evidence.

{¶ 16} The assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and GALLAGHER, J., concur.

(Hon. Eileen A. Gallagher, Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
Matthew T. Crawford
Lori R. Cicero
Hon. Mary K. Huffman